IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| STEPHEN HOWARD, )<br>    )<br>    Petitioner/Defendant, )<br>    )<br>vs. )<br>    )<br>UNITED STATES OF AMERICA, )<br>    )<br>    Respondent/Plaintiff. ) | Case No. 3:16-CV-803-MHT-CSC<br>(Cr. No. 3:15-CR-240-MHT-CSC) |

## GOVERNMENT'S REPONSE TO THE DEFENDANT'S SUPPLEMENT TO HIS § 2255 MOTION

COMES NOW the United States of America, by and through its attorney, Louis V. Franklin, Sr., United States Attorney, and responds to Defendant-Movant Stephen Howard's supplemental motion under 28 U.S.C. § 2255, see Doc. 15.

### I. PROCEDURAL HISTORY

**A.   Original Motion and Response**

On October 3, 2016, Howard filed a pro se motion to vacate his convictions and sentence. Doc. 1. In that motion and in a supporting memorandum, Howard raised various Sixth Amendment claims of ineffective assistance of counsel. Doc. 1; Doc. 2 at 1–5. On November 9, 2016, the government replied in opposition. Doc. 6.[1]

**B.   Supplemental Motion**

On December 1, 2016, Howard filed a motion seeking leave to supplement his § 2255 motion. Doc. 15. The Court construed the motion as one seeking leave to amend the motion and then granted that motion to amend the pending § 2255 motion. Doc. 16.

---

[1] In its original response, the government described, at length, the case's factual and procedural history. Doc. 6 at 1–12. Thus, the following only summarizes the significant events that have occurred in the case since the government filed its response.

In the supplemental motion, Howard advances a new claim of actual innocence of the offenses described in counts one, two, and four of the indictment—each of which alleged unlawful distribution of analogues of controlled substances, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 813.  Doc. 15 at 2; see Cr. Doc. 19 at 1–2; Cr. Doc. 76 at 1.[2]  In support of that claim, Howard offers one primary argument, namely that 21 U.S.C. § 813, the analogue act, is unconstitutionally vague as applied to 1,4-butanediol, the analogue of gamma-hydroxybutyric acid (GHB), that Howard unlawfully possessed and distributed.  See Doc. 15 at 3–6.

## II.  ARGUMENT

With this background in mind, the following explains the various ways in which Howard's new post-conviction claim, like the ones he previously advanced, falls short.

**A.     Howard's New Claim is Untimely**

As explained in the government's initial response, § 2255(f) provides for a one-year limitation period for a defendant to seek relief under the statute.  Doc. 6 at 12; see 28 U.S.C. § 2255(f).  That limitations period expires one year from, inter alia: (1) "the date on which the judgment of conviction becomes final"; or (2) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255(f)(1), (4).[3]

Under the first provision of § 2255(f), Howard's new claim is undoubtedly untimely.  As described in the government's response, Howard's conviction became final on March 16, 2016.  See Doc. 6 at 12.  Thus, § 2255(f)(1) required that Howard file all post-conviction claims by no

---

[2]Howard does not specifically attach his claim to those counts of conviction.  However, his argument does not present any claim of actual innocence of the firearms brandishing offense alleged in count three or the methamphetamine possession offense alleged in count six.  See Doc. 15 at 1–7; see also Cr. Doc. 76 at 2.  Thus, the government construes Howard's argument as pertaining only to his convictions on counts one, two, and four.

[3]The statute provides two alternative bases for triggering the limitations period.  See 28 U.S.C. § 2255(f)(2), (3).  However, those provisions are clearly not relevant here.

later than March 16, 2017. The envelope attached to Howard's motion to supplement indicates that Howard did not attempt to submit this claim of actual innocence until November 20, 2017 when he placed the pleading in his prison's mailbox. See Doc. 15 at 7; see also Garvey v. Vaughn, 993 F. 2d 776, 781 (11th Cir. 1993) (a prisoner's pro se pleadings are considered filed when those pleadings are addressed to a court clerk and placed in the prison's mailbox). Thus, Howard raised the claim eight months too late.

In his motion to supplement, Howard appears to suggest that his claim may be timely under § 2255(f)(4). See Doc. 15 at 2 (claiming that his new claim "was previously unavailable to him and . . . could not have been discovered through his 'Due Diligence'"). Section 2255(f)(4), however, does not render Howard's claim timely. Howard's new claim appears to rest entirely on the vagueness doctrine, as it developed in judicial precedent, some of which Howard cites. The Eleventh Circuit has explained that "[s]ince Section 2255(f)(4) is predicated on the date that 'facts supporting the claim' could have been discovered, the discovery of a new court legal opinion, as opposed to new factual information affecting the claim, does not trigger the limitations period." Madaio v. United States, 397 F. App'x 568, 570 (11th Cir. 2010); see also Martin v. United States, No. 1:11-CV-632-WKW-SRW, 2013 WL 3853007, *2 (M.D. Ala. July 24, 2013) ("A court decision in a case not involving the petitioner does not constitute a 'fact' triggering § 2255(f)(4)."). Applying this rule, the judicial opinion upon which Howard rests his claim of actual innocence do not constitute new "facts supporting the claim," see Madaio, 397 F. App'x at 570, sufficient to trigger the § 2255(f)(4) limitations period.

Despite Howard's claim being otherwise barred by § 2255(f), the claim could nevertheless be timely under the relation back doctrine. Under this principle, set forth at Rule 15(c) of the Federal Rules of Civil Procedure, "an amendment of a pleading relates back to the

3

date of the original pleading when the claim or defense asserted arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000) (quotations and alterations omitted); see Fed. R. Civ. P. 15(c)(2). The Eleventh Circuit has held that an untimely § 2255 claim does not "relate back" to a timely claim simply because the "amended claims arise from the same trial and sentencing proceeding as the [claims raised in] the original motion." Davenport, 217 F.3d at 1345 (quotation marks omitted); see also Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003). Rather, for the relation back doctrine to apply, "[t]he untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" Farris, 333 F.3d at 1215 (quoting Davenport, 217 F.3d at 1344). New claims alleging trial errors different from those alleged in a timely filed § 2255 motion do not relate back to the original motion. See id.; see also Pruitt v. United States, 274 F.3d 1315, 1319 (11th Cir. 2001) (concluding that untimely claims of ineffective assistance of counsel and prosecutorial misconduct at trial did not relate back to timely claims of errors at sentencing).

These principles make clear that the relation-back doctrine does not apply here. Howard's original motion contained only claims that Howard did not receive effective assistance of counsel in deciding whether to plead guilty or proceed to trial. Doc. 1; Doc. 2 at 1–5. Howard's new claim that he is related to the timely claims only to the extent that it arises from the same criminal case as those timely claims. Under the Eleventh Circuit's long-established precedent, such a tangential connection is insufficient to trigger the relation-back doctrine. See Davenport, 217 F.3d at 1344–45; see also Farris, 333 F.3d at 1215; Pruitt, 274 F.3d at 1319.

As Howard's new claim is not itself timely under any of the provisions of § 2255(f) and does not relate back to timely claims, the claim is barred by the one-year statute of limitations. See 28 U.S.C. § 2255(f). The Court should thus decline to consider the merits.

**B.     Howard's New Claim is Barred by the Procedural Default Doctrine**

Even if Howard's new claim were timely, another impediment would nevertheless bar the Court's reaching the merits of the claim—namely, the procedural default doctrine. Under the procedural default rule, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (quotation marks omitted). A claim is "available" if it can be resolved on direct appeal "without further factual development." Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1992). There are two exceptions to this prudential doctrine. "A defendant can avoid a procedural bar only by establishing one of two exceptions to the procedural default rule." Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004). "Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." Id. "Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. (quotation marks omitted).

Howard could have asserted his vagueness challenge at trial through a motion to dismiss counts from the indictment. Had the district court ruled against him, Howard could have raised the vagueness issue on direct appeal. He did none of those things. Accordingly, as the

5

vagueness claim was available to him previously, the procedural default doctrine bars the claim, absent an exception applying here. See Mills, 36 F.3d at 1055.

As for the first exception, Howard does not make any effort to demonstrate cause or prejudice. Nor are either readily apparent. As for cause, the cases to which Howard cites were all issued well before Howard entered his guilty plea. Thus, Howard's is not a claim that "is so novel that its legal basis [was] not reasonably available to counsel." See Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611 (1998) (quotation marks omitted). Nor did subsequently overruled precedent serve as an impediment to Howard's raising the claim. See id. Howard cannot demonstrate prejudice because, as explained below, the claim lacks merit and, as a result, consideration of the issue would not lead to a different outcome. See Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (explaining that to satisfy the prejudice requirement, a defendant must establish a reasonable probability that the outcome of the proceeding would have been different).

Turning to the second exception, "[t]o show actual innocence of the crime of conviction, a movant must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of the new evidence of innocence." McKay, 657 F.3d at 1196 (quotation marks and alterations omitted). Thus, thee exception deals exclusively with factual innocence claims; a claim of legal innocence is insufficient to excusive a procedural default. Id. at 1199. Howard's claim that the statute under which the government prosecuted him is void for vagueness is a claim of legal—not factual—innocence. Accordingly, the actual innocence exception to the procedural default doctrine is inapplicable. See id.

Because neither exception would apply, the procedural default doctrine would bar consideration of Howard's new claim even if that claim were timely.

**C.    Howard's New Claim Lacks Merit**

Even if the Court were to reach the merits of Howard's new claim, the claim would fail. In United States v. Fisher, 289 F.3d 1329 (11th Cir. 2002), the Eleventh Circuit considered and rejected a very similar claim.

There, the defendant argued that the analogue act was unconstitutionally vague as applied to another analogue of GHB, namely gamma-butyrolactone (GBL). Id. at 1332–33. The Court rejected the argument. Applying the notice prong of the vagueness test, the Court first concluded "that the public was given notice that all GHB analogues were illegal when" Congress enacted a statute ordering the Attorney General to place the drug on Schedule I and when the Drug Enforcement Administration (DEA), pursuant to Congress's instruction, promulgated a final rule making GHB a Schedule I controlled substance. Id. at 1336; see Pub. Law No. 106-172, § 3(a)(1) (2000); Addition of Gamma-Hydroxybutyric Acid to Schedule I, 65 Fed. Reg. 13235–13238 (March 13, 2000) (codified at 21 C.F.R. pts. 1301 and 1308). The Court then asked "whether an ordinary person could look at the definition of a controlled substance analogue and determine that GBL is an analogue of GHB." Id. at 1336. After reviewing the record evidence, which established that GBL, upon ingestion, is transformed into a metabolite of GHB thus triggering the harmful effects of GHB, the Court had no trouble concluding that "[p]eople of ordinary intelligence would easily be able to determine that a substance, which is converted upon ingestion into a metabolite with a substantially similar chemical structure and effect on the central nervous system as a schedule I controlled substance, would meet the definition of a controlled substance analogue. Id. at 1338–39.

Fisher would doom Howard's claim were the Court to reach that claim. Fisher makes clear that an ordinary person has notice that GHB analogues are prohibited. See id. at 1336. The

7

only question, then, would be whether a person of reasonable intelligence would know that 1,4-butanediol is a prohibited analogue of GHB. Id. at 1336. That question would be answered affirmatively. Howard does not dispute that 1,4-butanediol metabolizes into GHB upon ingestion, thus triggering the same harmful effects as those caused by GHB. In fact, the Eleventh Circuit, in an opinion issued a few years after Fisher, affirmed convictions for violating the analogues act by distributing 1,4-butanediol. See United States v. Brown, 415 F.3d 1257, 1272–73 (11th Cir. 2005). In doing so, the Court observed that the government's trial evidence—consisting of expert testimony—established that: (1) "1,4-butanediol rapidly metabolizes into GHB when it is ingested"; and (2) 1,4-butanediol "has a substantially similar chemical structure" to GHB. Id. at 1271. Had Howard required the government to do so, it would have presented the same expert testimony regarding the effects of 1,4-butanediol and the similarity between 1,4-butanediol and GHB.[4] In light of such evidence, no ordinary person would have trouble concluding that 1,4-butanediol meets the definition of a controlled substances analogue. See Fisher, 289 F.3d at 1339.[5]

### III. CONCLUSION

For the above reasons, the Court should dismiss defendant-movant Stephen Howard's § 2255 motion and his amended motion, without conducting an evidentiary hearing.

Respectfully submitted this 4th day of January, 2018.

---

[4] Moreover, in Fisher, the Court quoted the DEA's final rule, which observed that the "FDA ha[d] also declared 1,4-butanediol a chemical related to both GHB and GBL, a Class I Health Hazard." 289 F.3d at 1335 n.8 (quotation marks omitted) (quoting Addition of Gamma-Hydroxybutyric Acid to Schedule I, 65 Fed. Reg. 13235–13238 (March 13, 2000)).

[5] Howard is correct that, in United States v. Roberts, No. 01 CR 410 RWSo., 2002 WL 3101834 (S.D.N.Y. Sept. 9, 2002), a district court did declare the analogue act unconstitutionally vague as applied to 1,4-butanediol. Id. at *6. However, approximately two years later, the Second Circuit vacated that opinion. See United States v. Roberts, 363 F.3d 118 (2d Cir. 2004). In doing so, the Second Circuit concluded that the analogue act's "definition of 'controlled substance analogue' gives the public clear enough warning that 1,4-butanediol qualifies as a controlled substance analogue and sufficiently limits prosecutorial and judicial discretion in its enforcement." Id. at 127. Thus, contrary to his assertions, Howard cites no valid precedent to support his claim.

LOUIS V. FRANKLIN, SR.
UNITED STATES ATTORNEY

<u>/s/Jonathan S. Ross</u>
JONATHAN S. ROSS
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
(334) 223-7280
Fax: (334) 223-7135
E-mail: Jonathan.Ross@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| STEPHEN HOWARD, ) | |
| ) | |
| Petitioner/Defendant, ) | |
| ) | |
| vs. ) | Case No. 3:16-CV-803-MHT-CSC |
| ) | (Cr. No. 3:15-CR-240-MHT-CSC) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent/Plaintiff. ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted,

LOUIS V. FRANKLIN, SR.
UNITED STATES ATTORNEY

Jonathan S. Ross
JONATHAN S. ROSS
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama  36104
(334) 223-7280
Fax: (334) 223-7135
E-mail: Jonathan.Ross@usdoj.gov