IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN HOWARD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:16cv803-MHT |
| | ) | [WO] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is petitioner Stephen Howard's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody.  Doc. # 1.[1]

## I.   INTRODUCTION

In June 2015, a federal grand jury returned a six-count indictment charging Howard with three counts of possession with intent to distribute 1, 4-butanediol for human consumption,[2] in violation of 21 U.S.C. §§ 813 & 841(a)(1) (Counts 1, 2 and 4); one count of brandishing a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 3); one count of possession of a firearm in furtherance of drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 5); and one

---

[1] References to document numbers assigned by the Clerk of Court in this action are designated as "Doc. #." Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

[2] 1, 4-butanediol is a "controlled substance analogue" of gamma-hydroxybutyrate acid ("GHB"), which is a listed Schedule I controlled substance.  *See* Doc. # 19 at 1; Doc. # 6-1 at 5.

count of possession of methamphetamine, in violation of 21 U.S.C. § 844(a) (Count 6). Doc. # 6-4.

On October 28, 2015, Howard pled guilty without benefit of a plea agreement to Counts 1, 2, 4, and 6 (the counts alleging drug offenses).[3]  When pleading guilty to those counts, Howard intended to go to trial on Counts 3 and 5 (the § 924(c) counts).

On December 7, 2015, however, Howard appeared before the court and pled guilty under a plea agreement to Count 3, which alleged he brandished a pistol during and in relation to a drug trafficking crime (18 U.S.C. § 924(c)(1)(A)(ii)).  Doc. # 6-8.  Under the plea agreement, the government moved to dismiss Count 5, which charged Howard with possessing a shotgun in furtherance of drug trafficking crime (18 U.S.C. § 924(c)(1)(A)(i)). Doc. # 6-7 at 3.  The plea agreement contained an appeal/post-conviction waiver, with exceptions for claims of ineffective assistance of counsel and prosecutorial misconduct. *Id*. at 6–7.

Following a sentencing hearing on January 24, 2016, the district court sentenced Howard to 102 months in prison, which consisted of 18 months on Counts 1, 2 and 4 and 12 months on Count 6, those counts to run concurrently, and 84 months on Count 3, to run consecutively to the other counts.  Howard did not appeal.

On September 18, 2016, Howard filed this § 2255 motion claiming his trial counsel was ineffective for (1) failing to apprise him of the government's burden of proof on Count 3 (the firearm-brandishing count); (2) failing to present a defense to that count; and (3)

---

[3] See Howard's criminal case, Case No. 3:15cr240-MHT, Doc. # 44.

coercing him into pleading guilty to that count.  *See* Docs. # 1 & 2.  The government filed a response on November 9, 2016, arguing that Howard's allegations of ineffective assistance of counsel lack merit and entitle him to no relief.  Doc. # 6.

Nearly a year later, on November 6, 2017, Howard amended his § 2255 motion to add a claim that he is actually innocent of the drug-distribution offenses he was convicted of under Counts 1, 2 and 4, because the Controlled Substance Analogue Enforcement Act ("Analogue Act") is unconstitutionally vague as applied to 1,4-butanediol.  Doc. # 15.  The government filed a response arguing that Howard's new claim is time-barred and also lacks merit.  Doc. # 19.

After considering the parties' submissions, the record, and the applicable law, the court finds that Howard's § 2255 motion should be denied without an evidentiary hearing. Rule 8(a), *Rules Governing Section 2255 Proceedings for the United States District Courts*.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other

3

injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B.   Ineffective Assistance of Counsel

#### 1.   *Strickland* Standard

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance."  *Id*.  (internal quotation marks and brackets omitted).  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one."  *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A "reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id*.  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been.  *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 2. *Howard's Allegation of Ineffective Assistance of Counsel*

Count 3 of the indictment charged Howard with violating 18 U.S.C. § 924(c)(1)(A)(ii) by brandishing a Ruger 9mm pistol during an undercover narcotics agent's controlled buy of 1, 4-butanediol from Howard.  *See* Doc. # 6-4 at 2.  Howard claims that his trial counsel was ineffective for (1) failing to apprise him of the government's burden of proof on the firearm-brandishing count; (2) failing to present a defense to that count; and (3) coercing him into pleading guilty to that count.  Doc. # 1 at 4; Doc. # 2 at 2–4.  In this regard, Howard alleges that his counsel advised him "there was no defense available" to the firearm-brandishing count and misled him by telling him he would be found guilty

of the count "because drugs were found at the scene, and the fact a firearm was partially visible." Doc. # 2 at 3. Howard maintains that he "handled the firearm with precautions" during the drug deal, and "unloaded it [and] gave it a safety check" before handing it to the agent to look at. *Id.* at 4. In Howard's view, his possession of the pistol did not amount to brandishing because he had no intent to intimidate the agent with the gun. *Id.* According to Howard, had he "understood that the government must prove the 'brandishing' elements, and had he known what exactly 'brandishing' meant, he would have proceeded to trial" instead of pleading guilty to Count 3. *Id.* at 3.

Title 18 § 924(c) provides in part that a defendant who uses or carries a firearm during and in relation to any crime of violence or drug trafficking crime, or possesses a firearm in furtherance of such crime, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to a separate and consecutive term of imprisonment of "not less than 5 years." 18 U.S.C. § 924(c)(1)(A)(i). And if the firearm is "brandished" during the crime of violence or drug trafficking crime, the consecutive sentence shall be "not less than 7 years." 18 U.S.C. § 924(c)(1)(A)(ii). For purposes of the statute, "the term 'brandish' means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(4).

The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A petitioner alleging ineffective assistance in this context must establish that counsel's performance

was deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process." *Hill*, 474 U.S. at 59. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial." *Id.*

### Trial Counsel's Affidavit

Howard's trial counsel, John Lovell, filed an affidavit addressing Howard's allegations of ineffective assistance. Doc. # 5-1. In his affidavit, Lovell states that when Howard retained his services, around September 2015, the government had already offered Howard a plea deal requiring Howard to accept a total sentence of 171 months (a sentence greater than the 102-month sentence Howard received). *Id.* at 1–2. According to Lovell, shortly after he took the case, he advised Howard of "the options he faced vis-à-vis trial or plea" and told Howard "repeatedly, clearly and unequivocally that he had the option of going to trial and that I would gladly try his case." *Id.* at 2. Lovell avers that he believed the issue of whether Howard "brandished" the pistol referenced in Count 3 was one Howard might win at trial, as opposed to the issue of whether Howard possessed the pistol during the drug deal, which Lovell believed "was never in question." *Id.* Because Howard's possession of the pistol was undeniable, Lovell says he recognized "a significant and potentially catastrophic issue looming" if the case went to trial. *Id.* Two separate § 924(c) counts were charged in Howard's indictment, the one in Count 3 and a second one in Count 5, which involved Howard's possession of a shotgun discovered in a search of his residence. *Id.* If the jury convicted Howard on both counts, Howard faced a mandatory

minimum sentence of 30 years' imprisonment under 18 U.S.C. § 924(c)(1)(C)(i).[4]  *Id.*
Lovell considered it possible that Howard could "win" at trial on the brandishing issue in
Count 3 but still be convicted on the two § 924(c) counts, for possessing the pistol in a drug
trafficking crime (Count 3) and possessing the shotgun in a drug trafficking crime (Count
5), resulting in at least a 30-year sentence.  *Id.* at 3.  Lovell states that he discussed these
matters fully with Howard.  *Id.*  According to Lovell, "[w]hen Mr. Howard contemplated
two extra years on the brandishing [count] versus a possible 30-year sentence, he chose to
enter a plea."  *Id*. at 4.  Lovell characterizes Howard as "trial adverse."  *Id.*  He maintains
that Howard "was always clear to me in his instructions that he did not want to go to trial"
and Howard expressed concerns to him "about going to trial and possibly spending the rest
of his life in prison."  *Id.*

<u>Change of Plea Hearing</u>

The transcript of Howard's December 7, 2015 change of plea hearing conflicts with
Howard's present claims that he did not understand the government's burden of proof on
the firearm-brandishing count and that he pled guilty only because he did not know what
"brandishing" meant.  During the plea colloquy, Howard stated under oath that he
understood he had the right to proceed to trial and also understood that, were he to proceed
to trial, the government would have to prove, beyond a reasonable doubt, that he brandished
a firearm during and in relation to his drug trafficking crime.  Doc. # 6-8 at 8–10.  Howard

---

[4] In the case of a second conviction under § 924(c), the sentence for the second conviction shall be a
consecutive term of imprisonment of "not less than 25 years."  18 U.S.C. § 924(c)(1)(C)(i).

also acknowledged that he had not been coerced into pleading guilty, that his plea was knowing and voluntary, and that he was in fact guilty of the offense. *Id*. at 5–6 & 14.

During the plea colloquy, the magistrate judge asked Lovell to question Howard regarding the elements of Count 3 to establish a factual basis for his plea. The following exchange occurred:

> MR. LOVELL: Mr. Howard, if this case went to trial, is it true that the government would prove that on or about May 14th of 2015 in Lee County, here in the Middle District of Alabama, you possessed with intent to distribute approximately three liters of 1,4-butanediol knowing that the substance you were distributing was an analog of a controlled substance?
>
> THE DEFENDANT: Yes.
>
> MR. LOVELL: All right. Furthermore, same date and time and same location, in furtherance of that drug trafficking crime that you just acknowledged, did you brandish a firearm, specifically, a Ruger LC nine-millimeter pistol?
>
> THE DEFENDANT: Yes. I showed the undercover officer a pistol.

Doc. # 6-8 at 11–12. Counsel for the government, Jonathan S. Ross, then asked Howard questions for the purpose of establishing the "brandishing" element of the offense:

> MR. ROSS: Mr. Howard, did you show the firearm to the purported purchaser of the 1,4-butanediol both in relation to the drug trafficking crime and with the intent to intimidate?
>
> THE DEFENDANT: I showed it to him, but not in a manner to intimidate.
>
> THE COURT: Why did you show it to him?
>
> THE DEFENDANT: Because he asked what it was when I opened the gun—my console. And I just told him what it was. And it was unloaded. And I made sure that it had no bullets in it, and I let him look at it. I handed it to him.
>
> MR. ROSS: Did you show—

THE DEFENDANT: If that's brandishing, then I guess I brandished it.

MR. ROSS: Did you show it in a manner that a reasonable—could be reasonably calculated to intimidate the undercover officer?

THE DEFENDANT: I guess so.

MR. LOVELL: You have to say yes or no.

THE DEFENDANT: Yes.

Doc. # 6-8 at 13.

"[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Here, Howard's own sworn statements at the change of plea hearing reflect that he understood the government's burden of proof on the firearm-brandishing count, that he understood the meaning of "brandishing," and that he specifically understood the conduct he was pleading guilty to when admitting he brandished the pistol during the controlled buy.

The Eleventh Circuit has held that the allegations of a § 2255 petitioner accompanied by his own affidavit are insufficient to mandate an evidentiary hearing in the face of a record contravening the defendant's affidavit. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014) (stating that, where a defendant tenders only his own affidavit to counter previous directly inconsistent testimony regarding plea coercion, "[t]he district court is entitled to discredit [the] defendant's newly-minted story

about being threatened when that story is supported only by the defendant's conclusory statements"); *see also Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the . . . affidavits submitted by [the movant] amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied [the] § 2255 motion.").  Howard does not allege specific facts sufficient to meet his heavy burden to rebut his own sworn statements at his change of plea hearing.  At most, Howard demonstrates he now has second thoughts about having admitted that he brandished the pistol during the drug deal, not that he didn't understand what he was admitting to when pleading guilty to Count 3.  Howard fails to establish deficient performance by his counsel that led him to plead guilty in circumstances where, had counsel performed otherwise, he would have pled not guilty and insisted on going to trial.

When Howard's cursory allegations are measured against the averments in the affidavit submitted by Lovell, Howard makes even less of a case of deficient performance by Lovell.  While Howard only generally alleges that Lovell failed to consider defenses against the firearm-brandishing count and suggests that Lovell did not adequately explain brandishing to him, Lovell's affidavit provides a full accounting of the advice he gave to Howard regarding that count as well as the matters Lovell took into consideration when discussing with Howard the benefits and hazards of either pleading guilty under a plea agreement or proceeding to trial on both § 924(c) counts (Counts 3 and 5).  Lovell also avers that Howard made it clear to him that he did not want to go to trial where there was a risk he could be convicted on both counts and receive a mandatory minimum 30-year

sentence.  Howard does not dispute the specific averments made by Lovell.  Where Lovell correctly understood that even success in convincing a jury that Howard did not brandish the pistol during the drug deal could still result in a conviction on Count 3 (for possessing the pistol during the crime), leading to a minimum 30-year sentence if Howard were also found guilty on Count 5, Lovell did not perform deficiently in negotiating the plea agreement entered into by Howard.  Failing to establish deficient performance by his counsel, Howard may not have relief on this claim.

Even if Howard could establish that Lovell performed deficiently, he fails to prove he was prejudiced by Lovell's performance, because he does not show he would have pled not guilty and insisted on going to trial but for Lovell's alleged errors.  *See Hill*, 474 U.S. at 59–60.  A mere allegation by a defendant that he would have insisted on going to trial but for counsel's errors is insufficient to establish prejudice; rather, the court will look to the factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial.  *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001); *United States v. Arvantis*, 902 F.2d 489, 494 (7th Cir. 1990); *see also Holmes v. United States*, 876 F.2d 1545 (11th Cir. 1989) (*Hill* does not require a hearing merely because a defendant asserts a claim of ineffectiveness of counsel when the record affirmatively contradicts the allegations).

The government maintains in its response to Howard's § 2255 motion that, had Howard proceeded to trial, the government would have called as a witness the undercover narcotics agent to whom Howard sold 1, 4-butanediol:

That agent could have testified that, while he and Howard were seated inside of Howard's vehicle, Howard reached into the vehicle's center console and retrieved a pistol. Howard then removed the magazine, cleared the weapon, and handed it to the undercover agent. Immediately thereafter, Howard retrieved the drugs from a backpack and proceeded to complete the drug transaction. As the undercover agent testified, the jury would have seen and heard the video and audio recordings of the transaction.

From this evidence, the jury would have had little difficulty concluding that Howard's display of the firearm was an attempt to intimidate his purported customer. This would have been all the more apparent when the jury considered the context of the action—earlier in the evening Howard had boasted about the guns that he kept at his home and the ways that he would use those guns to protect his drug inventory. The jury would have concluded that Howard's showing the undercover agent the firearm was a subtle means of substantiating his boasts that he was in fact a gun-carrying drug dealer.

Doc. # 6 at 18–19.

Given the evidence the government could have proffered, there was a substantial likelihood a jury would convict Howard for brandishing the pistol during the drug deal alleged in Count 3. Moreover, Howard suggests no viable defense against being convicted under Count 3 for at least possessing the pistol during the drug deal, in the event he convinced the jury that his actions with the pistol did not constitute brandishing. Howard also suggests no viable defense against the second § 924(c) count, Count 5, involving the shotgun found in his residence. If convicted at trial on both Counts 3 and 5, with a jury finding of brandishing on Count 3, Howard would have faced a mandatory minimum sentence of 32 years, consecutive to whatever sentence he received for distributing 1,4-butanediol. *See* 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(1)(C)(i). As noted above (and as recognized by Lovell in his affidavit), even if Howard prevailed on his argument that he did not brandish the pistol in Count 3, he would likely still have been convicted of two

13

counts of *possessing* a firearm in furtherance of a drug trafficking crime.  *See* 18 § 924(c)(1)(A)(i).  In that event, he would have faced a mandatory minimum sentence of 30 years, consecutive to his sentence on the drug distribution counts.  *See* 18 U.S.C. § 924(c)(1)(C)(i).  By pleading guilty to Count 3, Howard very likely reduced by at least 25 years the sentence he would have received had he gone to trial.

Given the strength of the government's case and the sentence Howard faced if convicted at trial, Howard is unconvincing when he asserts that, but for Lovell's alleged deficiencies, he would not have pled guilty to Count 3 and would instead have proceeded to trial.  Under the circumstances, and considering the matters in the record that contravene Howard's claim, this court credits Lovell's specific averment that Howard told him he did not want to risk proceeding to trial.  Lovell's specific averment in this regard carries more weight than Howard's cursory assertion that he would not have pled guilty if he had a better understanding of the term "brandishing."   Because Howard fails to establish prejudice resulting from Lovell's performance, he may not have relief on this claim.  *See United States v. Hunt*, 560 F. App'x 2, 3 (D.C. Cir. 2014) ("[T]he overwhelming evidence against Hunt, together with the somewhat favorable terms of the plea deal, suggest that, even if Hunt's counsel performed deficiently, there is no 'reasonable probability' that but for counsels' errors the outcome of the proceeding would have been different."); *United States v. Dyess*, 730 F.3d 354, 362–63 (4th Cir. 2013) (§ 2255 movant alleging he received ineffective assistance of counsel in deciding whether to plead guilty could not establish prejudice where "the Government had overwhelming evidence of [the movant's] guilt—

his arrest and prosecution were the result of a long investigation complete with wiretaps, drug buys, and co-conspirator testimony").

### B.   November 6, 2017 Amendment

In his amendment filed on November 6, 2017, Howard argues he is actually innocent of the drug-distribution offenses he was convicted of under Counts 1, 2 and 4, because, he says, the Analogue Act is unconstitutionally vague as applied to 1,4-butanediol.  Doc. # 15.  Under the Analogue Act, 21 U.S.C. §§ 802(32)(A) & 813, some substances not listed as controlled substances but sufficiently similar to a listed substance are considered to be "controlled substance analogues," which are treated as Schedule I controlled substances for the purposes of federal drug law.[5]  The government considers 1, 4-butanediol to be a controlled substance analogue of the Schedule I controlled substance gamma-

---

[5] "A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purpose of any Federal Law as a controlled substance in schedule I."  21 U.S.C. § 813.

　　Except as provided in subparagraph (C), the term "controlled substance analogue" means a substance—

　　　(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

　　　(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

　　　(iii) with respect to a particular person, which such person represents or intends to have a stimulant depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A).

hydroxybutyrate acid (known as "GHB" or, colloquially, the "date-rape drug").  Howard claims the Analogue Act is unconstitutionally vague because it fails to provide adequate notice that 1, 4-butanediol is a proscribed substance and also lends itself  to arbitrary enforcement.  Doc. # 15 at 3-5.

The government argues that Howard's claim is time-barred under the limitation period in 28 U.S.C. § 2255(f).[6]  Doc. # 19 at 2–5.  This court agrees.

As a general rule a § 2255 motion, and all claims for relief under § 2255, must be filed within a year of the date on which a petitioner's judgment of conviction becomes final.  *See* 28 U.S.C. § 2255(f)(1).  Where no appeal is taken, a judgment of conviction becomes final when the time for filing a direct appeal expires—that is, 14 days after the district court enters its judgment.  *See* Fed.R.App.P. 4(b)(1)(A); *Ramirez v. United States*, 146 F. App'x 325, 326 (11th Cir. 2005) (citing *Akins v. United States*, 204 F.3d 1086, 1089

---

[6] The timeliness of a § 2255 motion is governed by 28 U.S.C. § 2255(f), which provides:

A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

n.1 (11th Cir. 2000)).  In Howard's case, the district court entered its judgment on March 2, 2016.  Howard took no appeal.  Therefore, Howard's conviction became final on March 16, 2016.  Any motion or claim by Howard seeking relief under § 2255 must have been filed by March 16, 2017.  Although Howard timely filed his § 2255 motion on September 18, 2016, he did not file the amendment to his § 2255 motion until November 6, 2017—over seven months after expiration of the limitation period in § 2255(f)(1).

Howard appears to suggest his new claim is timely under § 2255(f)(4).  *See* Doc. # 15 at 2 (where Howard says his claim is based on new evidence "which was previously unavailable to him and which could not have been discovered through his 'Due Diligence'").  Section 2255(f)(4) provides that the one-year limitation period runs from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  However, § 2255(f)(4) does not apply to Howard's claim.  His claim rests entirely on the vagueness doctrine, as it developed in judicial precedent cited in his motion to amend.  *See* Doc. # 15 at 3–6 (citing, e.g., *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Smith v. Goguen,* 415 U.S. 566, 574 (1974)).  A court decision in a case not involving the petitioner does not constitute a "fact" triggering § 2255(f)(4).  *Madaio v. United States*, 397 F. App'x 568, 570 (11th Cir. 2010); *see also Martin v. United States*, 2013 WL 3853007, *2 (M.D. Ala. 2013).  Therefore, the judicial opinions upon which Howard rests his new claim are not "facts supporting the claim." Moreover, none of the judicial opinions relied upon by Howard were decided within a year of the date on which Howard filed his amendment.  Those opinions were discoverable with

reasonable diligence at the time Howard was sentenced. Section 2255(f)(4) simply does not apply to Howard's new claim, and § 2255(f)(1) renders the claim untimely.[7]

The Federal Rules of Civil Procedure provide for the relation back of amendments filed after the running of the limitation period in certain circumstances. Rule 15(c) of the Federal Rules of Civil Procedure provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2). "'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed." *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). However, "Congress did not intend Rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts." *Pruitt v. United States*, 274 F.3d 1315, 1317 (11th Cir. 2001). This is so the government has sufficient notice of the facts and claims giving rise to the proposed amendment. *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002); *Anthony v. Cambra*, 236 F.3d 568, 576 (9th Cir. 2000).

An untimely amendment to a § 2255 motion does not relate back to the date of the original motion where it "seek[s] to add a new claim or to insert a new theory into the case." *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001) (emphasis omitted).

---

[7] Howard sets forth no facts to establish that he may use § 2255(f)(2) or (3) as a triggering event for limitations purposes for the claim in his amendment. *See* 28 U.S.C. § 2255(f)(2) & (3). Nor does Howard set forth any facts or argument to establish he is entitled to equitable tolling of the limitation period.

It is not sufficient for an untimely amendment merely to assert the same general type of legal claim as in the original § 2255 motion. *See United States v. Craycraft*, 167 F.3d 451, 456–57 (8th Cir. 1999) (holding that an untimely claim of ineffective assistance of counsel for not filing an appeal did not relate back to timely ineffective assistance claims for not pursuing a downward departure, not raising an objection at trial, and not challenging a prior conviction).

Here, Howard's new claim—that he is actually innocent on Counts 1, 2 and 4 because the Analogue Act is unconstitutionally vague as applied to 1,4-butanediol—bears no legal or factual relationship to his earlier claim that his trial counsel rendered ineffective assistance of counsel regarding his guilty plea to Count 3. The new claim seeks to insert a new theory of relief into the case. Therefore, the new claim does not relate back under Rule 15(c) to Howard's timely § 2255 motion. Because the new claim does not relate back, it is time-barred under § 2255(f)(1). *See Farris v. United States*, 333 F.3d 1211, 1215–16 (11th Cir. 2003); *Pruitt*, 274 F.3d at 1319.

A colorable claim of actual innocence may provide a gateway to review of an otherwise time-barred habeas claim. *See McQuiggin v. Perkins*, 569 U.S. 383, 393–94 (2013). A petitioner asserting actual innocence as a gateway to review of a time-barred claim must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "[This] standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). The actual innocence exception deals exclusively with claims of factual innocence and does not apply

to claims of legal innocence. *McKay v. United States*, 657 F.3d 1190 (11th Cir. 2011). Howard's claim that the statute under which he was convicted is unconstitutionally vague is a claim of legal innocence, not factual innocence. Moreover, Howard presents no new evidence to demonstrate that it is more likely than not that no reasonable juror would have convicted him on Counts 1, 2, and 4. Because Howard's new claim does not fall with the purview of the actual-innocence exception, the limitation period in § 2255(f)(1) bars review of the claim.

Even if Howard's new claim is not time-barred, it lacks merit and entitles Howard to no relief. In *United States v. Fisher*, 289 F.3d 1329 (11th Cir. 2002), the Eleventh Circuit considered and rejected a claim similar to the one Howard presents. There, the defendant argued that the Analogue Act is unconstitutionally vague as applied to gamma-butyrolactone (commonly known "GBL"), which, like 1, 4-butanediol, is considered a controlled substance analogue of the Schedule I controlled substance gamma-hydroxybutyrate acid, "GHB." *Fisher*, 289 F.3d at 1332–33. Applying the notice prong of the vagueness test, the Eleventh Circuit first concluded "that the public was given notice that all GHB analogues were illegal" when Congress enacted a statute ordering the Attorney General to place the drug on Schedule I and when the DEA, under Congress's instruction, promulgated a Final Rule making GHB a Schedule I controlled substance. *Id.* at 1336. The Court then asked whether "an ordinary person" could look at the definition of "controlled substance analogue" provided at 21 U.S.C. § 802(32) "and determine that GBL is an analogue of GHB." *Id.* at 1336. After reviewing the record evidence, which established that GBL, upon ingestion, is transformed into a metabolite of GHB, thereby

triggering the harmful effects of GHB, the Court concluded that "[p]eople of ordinary intelligence would easily be able to determine that a substance, which is converted upon ingestion into a metabolite with a substantially similar chemical structure and effect on the central nervous system as a schedule I controlled substance, would meet the definition of a controlled substance analogue." *Id*. at 1339.

*Fisher* clarifies that an ordinary person has notice that GHB analogues like GBL are prohibited. *See id*. at 1336. The issue in Howard's case, then, is whether a person of ordinary intelligence would know that 1,4 butanediol is, like GBL, a prohibited analogue of GHB.[8] In *United States v. Brown*, 415 F.3d 1257 (11th Cir. 2005), an opinion issued three years after *Fisher*, the Eleventh Circuit affirmed convictions for violating the Analogue Act by distributing 1,4-butanediol. In doing so, the Court observed that the government's trial evidence—consisting of expert testimony—established that: (1) "1,4-butanediol rapidly metabolizes into GHB when it is ingested"; and (2) 1,4-butanediol "has a substantially similar chemical structure" to GHB. *See* 415 F.3d. at 1271. The Court in *Brown* noted that the defendants in the case stipulated that 1,4-butanediol has the same

---

[8] This court notes that the Eleventh Circuit in *Fisher* cited the DEA's Final Rule, which contained the statement:

> The DEA has received reports that GBL, the solvent precursor for GHB, is being abused due to its rapid conversion to GHB soon after ingestion. On January 21, 1999, the FDA issued a request for a voluntary recall of all GBL-containing products sold in health food stores and warned the public of its danger to the public health. FDA has also declared 1,4–butanediol, a chemical related to both GHB and GBL, a Class I Health Hazard. On May 11, 1999, the FDA issued another warning on 1,4 butanediol, GHB and GBL stating that these substances pose a significant health hazard.

289 F.3d at 1335 n.8.

effect on a person's central nervous system as GHB and that, when ingested, 1,4-butanediol is actually transformed into GHB. *See* 415 F.3d at 1261. Howard does not dispute that 1,4-butanediol metabolizes into GHB upon ingestion, thus triggering the same harmful effects as those caused by GHB.

Various courts that have addressed the issue head-on have held that the Analogue Act is not unconstitutionally vague as applied to 1, 4-butanediol, so that 1, 4-butanediol is properly considered a controlled substance analogue of GHB. *See United States v. Bamberg*, 478 F.3d 934, 937 (8th Cir. 2007); *United States v. Roberts*, 363 F.3d 118, 127 (2d Cir. 2004); *United States v. Washam*, 312 F.3d 926, 930–31 (8th Cir. 2002). Under the circumstances, this court concludes that a person of ordinary intelligence would have no trouble concluding that 1,4-butanediol meets the definition of a controlled substance analogue. Howard's argument to the contrary fails. The Analogue Act is not unconstitutionally vague as applied to 1,4-butanediol, and Howard does not demonstrate his actual innocence on Counts 1, 2 and 4.

### C.   *Sessions v. Dimaya*

In a filing received by this court on February 19, 2019 (Doc. # 31), Howard contends that the Supreme Court's recent opinion in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), entitles him to relief from his conviction on Count 3 for brandishing a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

In *Dimaya*, the Supreme Court addressed whether *Johnson v. United States*, 135 S.Ct. 2551 (2015), where the Court held that the residual clause of the Armed Career

Criminal Act is unconstitutionally vague, applies to the definition for a "crime of violence" in 18 U.S.C. § 16. *See* 138 S. Ct. at 1210–11.

Numerous courts have held that *Dimaya* has no application to convictions under § 924(c) based on drug trafficking crimes. *See e.g., Russaw v. United States*, 2018 WL 2337301, at *5 (N.D. Ala. 2018); *Boyd v. United States,* 2018 WL 3155830, *2 (S.D. Fla. 2018); *United States v. Johnson*, 2018 WL 2063993, at *3 (D.S.C. 2018); *United States v. Luckey*, 2018 WL 2077616, at *3 (N.D. Tex. 2018). *Dimaya* clearly has no application to Howard's § 924(c) conviction, because the firearm was possessed in furtherance of a drug trafficking crime, not a crime of violence. *Dimaya* affords Howard no relief.

## III.   CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Howard be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation or before March 11, 2019. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by

the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 25th day of February 2019.


_____/s/  Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE